**NVMERCURE LIMITED PARTNER- SHIP, and NVCommercial Incorporated, Plaintiffs,**

v.

**RESOLUTION TRUST CORPORATION, as Receiver for Perpetual Savings Bank, F.S.B., Defendant.**

**Civ. A. No. 94–1113.**

United States District Court, District of Columbia.

Dec. 12, 1994.

John Williams Polk, Baker & McKenzie, Roger J. Lerner, Lerner & Reed, Washington, DC, for plaintiffs NVMercure Ltd. Partnership, NVCommercial Inc., Gen. Partner.

Douglas E. Ginsburg, Jeffrey Phillip Bloom, Metzger, Hollis, Gordon & Mortimer, Kirk Kelso Van Tine, Wendy Jane Lang, Baker & Botts, L.L.P., Washington, DC, for defendant Resolution Trust Corp. in its capacity as Receiver for Perpetual Savings Bank, F.S.B.

## MEMORANDUM OPINION

SPORKIN, District Judge.

NVMercure Limited Partnership and its general partner, NVCommercial, Inc. ("NVMercure"), filed this lawsuit against Resolution Trust Corporation ("RTC") for judicial review of RTC's denial of Plaintiffs' claims for money damages pursuant to 12 U.S.C. § 1821(d)(6). This matter comes before the Court on Defendant RTC's motion to dismiss Count I of Plaintiffs' complaint which seeks damages for RTC's alleged breach of a

contractual right of first refusal. Defendant RTC contends that Plaintiffs' contractual right of first refusal is preempted by 12 U.S.C. § 1821(d)(2)(G)(i)(II) to the extent that Plaintiffs seek to enforce that right against RTC. Defendant contends that because the right of first refusal is not legally enforceable against the RTC the right cannot be a basis for an award of damages.

## FACTUAL BACKGROUND

Plaintiffs' action relates to a 175 acre property located in Loudoun County, Virginia that is known as "Mercure Business Park" (hereinafter "Property"). In 1988, Perpetual Savings Bank FSB ("Perpetual") loaned Plaintiffs $20 million to buy and develop this property. On May 30, 1991, the loan was restructured after certain defaults by Plaintiffs. The restructure cancelled Plaintiffs' $20 million debt and provided that Mercure Business Park would be sold under a power of sale contained in the deed of trust securing the original loan and that Perpetual would bid for the Property at the trustees' sale. Perpetual, through its wholly owned subsidiary, SAD Realty, bought the Property and Plaintiffs gave Perpetual a deficiency note in the amount of approximately $6.4 million. Plaintiffs continued to manage the Property pursuant to a Property Management and Marketing Agreement.

The Debt Restructure Agreement gave Plaintiffs a "right of first refusal and option to purchase" the NVMercure Property. Paragraph 13.4 of the Agreement provided:

*Right of First Refusal and Option to Purchase.*

> If Perpetual receives a bona fide offer to purchase the Property from a third party, NVMercure shall have the right to match such offer at the same price and on the same terms and conditions as such bona fide offer by notice of exercise of such right provided to Perpetual in writing within ten (10) days of receipt of notice of such offer from Perpetual. In addition, NVMercure shall have the option at any time to purchase the Property for a purchase price that is the greater of (1) the Base Amount plus indebtedness owing under the Deficiency Note at the time of

purchase or (b) the November 30, 1994 fair market value of the Property then owned by Perpetual.

On January 10, 1992, the Director of the Office of Thrift Supervision ("OTS") declared Perpetual insolvent, ordered it closed and appointed the RTC as the receiver for Perpetual. Pursuant to 12 U.S.C. § 1821(d)(2)(A)(i), RTC succeeded to all of Perpetual's assets, including the Property and Perpetual's rights under the Debt Restructure Agreement.

Subsequently, RTC entered into a Purchase and Sale Agreement with Sunchase Land Fund, G.P., Sunchase Holdings, Inc., and Sterling Pacific Assets ("Sunchase Group"). Sunchase Group bought the Property as part of a group package of loans and parcels of real estate. RTC did not give NVMercure the right of first refusal as provided in the Debt Restructure Agreement between Perpetual and NVMercure.

## MOTION TO DISMISS STANDARDS

■ In ruling on a motion to dismiss for failure to state a claim upon which relief can be granted, the Court must accept as true each of the allegations in the complaint. The motion should not be granted unless it appears beyond doubt that the plaintiffs can prove no set of facts entitling them to the relief sought in the complaint. *See, e.g. Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–03, 2 L.Ed.2d 80 (1977).

## RTC MANDATE

The RTC was created by Congress in the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Pub.L. No. 101–73, 103 Stat. 183 ("FIRREA"). The Second Circuit recently noted:

> FIRREA, adopted on August 9, 1989, Pub.L. No. 101–73, 103 Stat. 364 ... "constitute[d] emergency legislation" to stop the financial hemorrhaging. S.Rep. No. 19 at 3. As the House Report put it: "The interest of the American taxpayer demand an expedited resolution to the monumental problems involved with the unprecedented costs of dealing with hundreds of insolvent

thrifts and the orderly disposition of the assets of these failed institutions."

*RTC v. Diamond,* 18 F.3d 111, 113 (2nd Cir.1994) (quoting H.R.Rep. No. 54(I), 101st Cong., 1st Sess. 308 (1989), *reprinted in,* 1989 U.S.C.C.A.N. 86, 104). The RTC was created to liquidate the assets of these failed institutions "expeditious[ly]." H.R.Rep. No. 101–54(I), 101st Cong., 1st Sess. 322 (1989), *reprinted in,* 1989 U.S.C.C.A.N. 86, 118.

One of the broad powers given to the RTC to enable the RTC to effectively and expeditiously liquidate the assets of the failed savings and loans is found in 12 U.S.C. § 1821(d)(2)(G)(i)(II):

> (G) Merger; transfer of assets and liabilities
>
> (i) In general
>
> The Corporation may, as conservator or receiver—
>
> (I) merge the insured depository institution with another insured depository institution or
>
> (II) subject to clause (ii), transfer *any asset* or liability of the institution in default (including assets and liabilities associated with any trust business) *without any approval, assignment, or consent with respect to such transfer.*

(emphasis added). Defendant RTC argues that this section preempts the Plaintiffs' contractual right of first refusal created by the Debt Restructure Agreement with Perpetual because the right of first refusal would require the RTC–Receiver to seek Plaintiffs' consent or approval before selling the property.

## PREEMPTION ANALYSIS

■ The Supremacy Clause of the United States Constitution provides that the "Laws of the United States ... shall be the Supreme Law of the Land." U.S. Const. art. VI, cl. 2. Federal law preempts state law to the extent that it conflicts with federal law. See, e.g., *California Fed. Sav. & Loan Ass'n v. Guerra,* 479 U.S. 272, 281, 107 S.Ct. 683, 689, 93 L.Ed.2d 613 (1987).

There is no doubt that under Virginia state contract law Plaintiffs had a contractual right of first refusal. Section 1821(d)(2)(G)(i)(II),

however, preempts this right because this section gives the RTC power to transfer "any asset ... of the institution ... without any approval, assignment, or consent with respect to such transfer." The right of first refusal would be a restraint on alienation that is specifically preempted by the Section because it would force the RTC to get approval or consent from the holder of the right before transferring the asset.

■ Plaintiffs concede that the right is preempted. Plaintiffs, in their opposition brief, state

> Contrary to RTC's suggestion, the plaintiffs are not challenging the supremacy of federal law, nor are they asserting that the RTC may not transfer assets and liabilities without first securing the approval, assignment, or consent with respect to such transfer.

Plaintiffs' Opposition Brief at 11. Rather than challenge the preemption of the state contractual right of first refusal, the Plaintiffs challenge the assertion that such preemption prevents a claim for damages: "[T]he plain language of § 1821(d)(2)(G)(i)(II), together with other provisions of FIRREA read as a whole, make it clear that there is no prohibition on a remedy of damages." *Id.* at 11.

## DAMAGES ANALYSIS

■ When interpreting a statute, the Court must first look to the plain language of the statute. It is also a well-settled principle of statutory construction that specific provisions are to be interpreted in manner which is consistent with the overall structure of the statute. *Mastro Plastics Corp. v. NLRB,* 350 U.S. 270, 285, 76 S.Ct. 349, 359, 100 L.Ed. 309 (1956). Section 1821(d)(2)(G)(i)(II) does not provide for an award of damages, and this Section clearly *preempts* contract rights restraining alienation.

In other sections of FIRREA, Congress specifically provided for an award of damages where the RTC is authorized to *repudiate contracts.* Sections 1821(e)(1), (2) and (3) empower the RTC to repudiate executory contracts entered into by a failed institution. Sections 1821(e)(3)–(8) provide for the pay-

ment of damages for the breaches of contract which results from the RTC's repudiations authorized under Sections 1821(e)(1)–(3). Congress specifically chose to treat restrictions on the transferability of receivership assets (whether by contract, statute or common law) in a special manner—through preemption rather than repudiation. The purpose of Section 1821(e) is to allow the RTC to terminate otherwise binding contracts, with limited liability, while Section 1821(d)(2)(G)(i)(II) preempts any state law, including contract law, that interferes with the RTC's freedom to transfer assets without allowing for damages.

■ Plaintiffs contend that Section 1821(d)(2)(G)(i)(II) does not specifically abrogate damage claims. However, it was unnecessary for Congress to so provide because the law of preemption provides for the abrogation of damages. Where a state law right is preempted by federal law, the state law right is rendered unenforceable. As the Supreme Court held, federal agencies acting within the scope of their authority may preempt and "render unenforceable state or local laws." *City of New York v. FCC*, 486 U.S. 57, 63–64, 108 S.Ct. 1637, 1642–43, 100 L.Ed.2d 48 (1988). *See also, Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982) ("[S]tate law is nullified to the extent that it actually conflicts with federal law."); *Cipollone v. Liggett Group, Inc.*, —— U.S. ——, ——, 112 S.Ct. 2608, 2617, 120 L.Ed.2d 407 (1992) ("[S]ince our decision in *M'Culloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 427, 4 L.Ed. 579 (1819) it has been settled that state law that conflicts with federal law is 'without effect.' "); *RTC v. Charles House Condominium Ass'n, Inc.*, 853 F.Supp. 226, 230 (E.D.La.1994) ("[F]ederal law renders unenforceable defendant's contractual right of first refusal. . . .")

■ Where a state law right is preempted and rendered unenforceable, there is no right to damages on the preempted right. An award of damages must be preempted to the same extent as injunctive relief. If the case were otherwise, then an award of damages could be used as a means of enforcing the state law right. The Supreme Court found

in *Cipollone v. Liggett Group, Inc.*, —— U.S. ——, ——, 112 S.Ct. 2608, 2620, 120 L.Ed.2d 407 that "[state] regulations can be as effectively exerted through an award of damages as through some form of preventive relief. The obligation to pay compensation can be, indeed is designed to be, a potent method of governing conduct and controlling policy." (quoting *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 247, 79 S.Ct. 773, 781, 3 L.Ed.2d 775 (1959)).

Contract law further supports the finding that NVMercure is not entitled to damages based on the preemption of its contractual right of first refusal. If a contract is rendered unenforceable, then the situation is treated as though no contract exists. If no contract right exists, then there can be no breach and, therefore, no damages. *Massengill v. Guardian Management Co.*, 19 F.3d 196, 205–6 n. 4 (5th Cir.1994).

## TAKINGS ANALYSIS

Plaintiffs further contend that RTC's interpretation of Section 1821(d)(2)(G)(i)(II) would result in violation of the "takings clause" of the Fifth Amendment. While there may be merit to this argument, the fact is there is no takings claim in the complaint.

■ Even if Plaintiffs had asserted a takings claim, this Court lacks jurisdiction to consider the claim. The Tucker Act, 28 U.S.C. § 1491(a)(1), and the Little Tucker Act, 28 U.S.C. 1346(a)(2), vest exclusive jurisdiction in the United States Court of Federal Claims for takings claims that exceed $10,000 in controversy. *See Bell Atl. Tel. Cos. v. FCC*, 24 F.3d 1441, 1444 n. 1 (D.C.Cir.1994); *Board of Governors v. DLG Fin. Corp.*, 29 F.3d 993, 999 (5th Cir.1994). The amount in controversy in this case is $7 million. Accordingly, this Court lacks jurisdiction to evaluate any takings claim in this case.

## CONCLUSION

The Court finds that Section 1821(d)(2)(G)(i)(II) preempts the Plaintiff's right of first refusal and that said right cannot form the basis for an award of damages against the RTC.

An appropriate order accompanies this memorandum opinion.

## ORDER

This matter comes before the Court on Defendant's motion to dismiss Count I of Plaintiffs' complaint which seeks damages for an alleged breach of a contractual right of first refusal. The Court finds that Section 1821(d)(2)(G)(i)(II) preempts the right of first refusal and Plaintiffs' claim for damages.

Accordingly, the Court hereby **ORDERS** that **Count I** of the Complaint be **DISMISSED** for failure to state a claim upon which relief can be granted pursuant to Fed. R.Civ.P. 12(b)(6).