E. Joseph Dean, Esq.
(see above)
Richard Hoffman (pro se)

477–B N.W. Douglas Street
Dallas, Oregon 97338–1022

Robert Dene Bateman E.
   Defendant–Appellant

Joseph Dean, Esq.
(see above)

William M. Dalton
   Defendant–Appellant

E. Joseph Dean, Esq.
(see above)

Jack C. Darley
   Defendant–Appellant

E. Joseph Dean, Esq.
(see above)

Stanley N. Hammer
   Defendant–Appellant

E. Joseph Dean, Esq.
(see above)

Robert B. Lorence
   Defendant–Appellant

E. Joseph Dean, Esq.
(see above)

(4) The parties shall file a report with this Court on the status of this case 180 days after the date of this Order and every 180 days thereafter.

DATED: 5/7/96
/s/ Stephen Reinhardt
Honorable Stephen Reinhardt, Presiding
Ninth Circuit Court of Appeals

Ranbir S. SAHNI, Plaintiff–Appellant,

v.

AMERICAN DIVERSIFIED PARTNERS; American Diversified Investment Corporation; Katz Brothers Development Corporation II; Does, 1 Through 50, Inclusive, Defendants–Appellees.

FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for American Diversified Savings Bank, Cross–Claimant–Appellee,

v.

Ranbir S. SAHNI, Cross–Defendant–Appellant.

No. 94–56534.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 5, 1996.

Decided May 7, 1996.

As Amended July 24, 1996.

---

Christopher J. Bellotto, Linda J. Berberian, F.D.I.C., Washington, DC, for appellees.

Ronald E. Gregg, Santa Ana, California, for appellant.

Before: WALLACE, FERGUSON, and T. G. NELSON, Circuit Judges.

FERGUSON, Circuit Judge:

In the late 1970's Sahni, the plaintiff-appellant, formed and was the sole general partner of over 50 limited partnerships whose purpose was to build apartment projects financed largely by the Department of Housing and Urban Development (the "HUD partnerships").

In 1983, Sahni purchased Tokay Bank, intending to merge it with another one of his corporations to form American Diversified Savings Bank (ADSB or "the Bank"). California banking authorities required that Sahni divest his partnership interests in the HUD partnerships. Sahni completed a series of complex transactions in an attempt to satisfy the banking authorities' request that he divest his partnership interests. First, Sahni formed ADSB (the Bank), and installed himself as Chairman and CEO. He also formed ADP, a limited partnership, and made himself the sole limited partner. ADIC, a wholly owned subsidiary of the Bank was then formed, and ADIC became ADP's general partner. Lastly, Sahni substituted ADP as general partner of the HUD partnerships. The FDIC has implied that Sahni completed these transactions in order to evade the banking authorities' request that he divest his interests in the HUD partnerships.

In 1986, the Bank was declared insolvent and placed in conservatorship. By 1989, the FDIC had become the Bank's receiver. Litigation began shortly thereafter between Sahni and the banking agencies, culminating in a comprehensive settlement agreement in December 1990. The settlement agreement provided for a substantial payment by Sahni to the FDIC, retention by Sahni of certain assets not subject to this appeal, and the transfer of all ownership interests in ADSB and its controlled entities to the FDIC for liquidation, except for a 1% interest retained by Sahni in the distributive share of ADP partnership income.

From 1990 to late 1991, several of the HUD partnerships and ADP's general partnership interests in the HUD partnerships were sold as part of the FDIC's liquidation of ADSB's assets. In 1991, the FDIC offered a bulk sale of the remaining ADP partnership interests. These interests were offered along with notes which were payable by the purchasers of the HUD partnerships directly to the FDIC. The FDIC was listed as the seller on these purchase agreements.

In February 1993, Sahni filed five lawsuits in state court seeking to rescind the FDIC sales of the HUD partnerships. Sahni named as defendants ADP, ADIC, and the third party purchasers of the HUD partnerships. These five cases were consolidated. Subsequently, the FDIC intervened and removed these consolidated cases to federal court pursuant to 12 U.S.C. § 1819(b)(2)(B). The FDIC then moved to dismiss the case pursuant to 12 U.S.C. § 1821(j) for lack of subject matter jurisdiction. All other defendants joined in this motion. The district

court granted the FDIC's motion to dismiss. Sahni now appeals the district court's decision on the grounds that: (1) the FDIC lacked standing to intervene; and (2) the district court erred in dismissing Sahni's complaint pursuant to § 1821(j).

■ We review questions of standing de novo. *Barrus v. Sylvania,* 55 F.3d 468, 469 (9th Cir.1995). The existence of subject matter jurisdiction is a question of law reviewed de novo. *Resolution Trust Corp. v. Midwest Fed. Sav. Bank,* 36 F.3d 785, 790 (9th Cir. 1993).

## I. *Standing*

■ Sahni contests the standing of the FDIC in the present case.[1] In *Wedges/Ledges of Cal., Inc. v. City of Phoenix,* 24 F.3d 56 (9th Cir.1994), this court set out the requirements for standing:

> Standing has constitutional and prudential dimensions. The Article III limitations are '(1) a threatened or actual distinct and palpable injury to the plaintiff; (2) a fairly traceable causal connection between the injury and the defendant's challenged conduct; and (3) a substantial likelihood that the requested relief will redress or prevent the injury.' The prudential limitations include a requirement that the plaintiff 'assert his own rights, rather than rely on the rights or interests of a third party' and 'allege an interest that is arguably within the zone of interests protected or regulated by the statute or constitutional guarantee in question.'

*Id.* at 61 (citations omitted).

Both the constitutional and prudential requirements for standing are satisfied in the present case. First, the constitutional requirements are met because the FDIC faces an injury which is directly traceable to Sahni's request for rescission of the HUD partnership sales. The FDIC was a party to all of the HUD partnership sales and was listed as the seller on these purchase agreements.

Moreover, the notes coupled with the HUD partnership sales were owned by the FDIC as receiver, and were payable directly to the FDIC. Some purchasers would have refused to buy the HUD partnerships if they had not been coupled with the FDIC notes. If the HUD partnership sales are rescinded, the FDIC faces not only the loss of the sales of the HUD partnerships, but also potential liability to the buyers under the purchase agreements. Finally, rescission of the HUD partnership sales would curtail the ability of the FDIC to fulfill its statutory mandate because rescission would have a chilling effect on the FDIC's future sales of ADSB's assets. *See Pyramid Constr. Co. v. Wind River Petroleum, Inc.,* 866 F.Supp. 513, 519 (D.Utah 1994) (recognizing that future transactions by the Resolution Trust Corporation might be unduly chilled if the RTC's asset sales were enjoined). The FDIC's power to liquidate the assets of a failed institution is critical to its ability to rescue failed institutions and the FDIC would suffer injury if this power was constrained.

■ Second, the prudential requirements for standing are satisfied as well. The FDIC is asserting its own rights as receiver of ADSB and of ADSB's assets. Moreover, the FDIC's right to liquidate the assets of ADSB is clearly protected by the statutes in question—12 U.S.C. § 1821(d) and 12 U.S.C. § 1821(j).

## II. *12 U.S.C. § 1821(j)* [2]

Sahni alleges on appeal that the district court lacked subject matter jurisdiction to dismiss his lawsuit. Sahni further asserts that even assuming the district court did have jurisdiction, § 1821(j) did not create a basis for dismissal because either: (1) no equitable relief was sought against the FDIC as receiver of ADSB; or (2) controlling case law has previously interpreted 12 U.S.C. § 1821(j) not to preclude equitable relief against the FDIC.

---

1. The FDIC intervened in state court pursuant to Cal.Civ.Proc.Code § 387(a),(b). The FDIC's right to intervene is not questioned on appeal. Rather, Sahni contests the standing of the FDIC.

2. 12 U.S.C. § 1821(j) was enacted as part of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA), codified at 12 U.S.C. § 1811 *et seq.*

## A. The Powers of the FDIC When Acting as Receiver

Congress has granted the FDIC as receiver express statutory authority to dispose of receivership assets, thereby reducing the losses borne by federal taxpayers when federally insured financial institutions, such as ADSB, fail. As receiver, the FDIC has broad authority to "take over the assets ... and conduct all business of the institution," "collect all obligations and money due the institution," and "preserve and conserve the assets and property of such institution." 12 U.S.C. § 1821(d)(2)(B)(i), (ii), (iv). Moreover, the FDIC may "place the insured depository institution in liquidation and proceed to realize upon the assets of the institution...." 12 U.S.C. § 1821(d)(2)(E). The FDIC as receiver may also "transfer any asset or liability of the institution in default ... without any approval, assignment, or consent...." 12 U.S.C. § 1821(d)(2)(G)(i)(II). Finally, the FDIC may "exercise ... such incidental powers as shall be necessary to carry out such powers," and "take any action authorized by this Chapter, which the [FDIC] determines is in the best interests of the depository institution, its depositors, or the [FDIC]." 12 U.S.C. § 1821(d)(2)(J)(i), (ii).

Indeed, the breadth of the FDIC's statutory powers as a receiver are reflected in the legislative history of 12 U.S.C. § 1821. Congress explained that the authority granted to the FDIC was "designed to give the FDIC power to take all actions necessary to resolve the problems posed by a financial institution in default." H.R.Rep. No. 54(I), 101st Cong., 1st Sess. 2 (1989), reprinted in 1989 U.S.C.C.A.N. 86, 126. See West Park Assoc. v. Butterfield Sav. & Loan Ass'n, 60 F.3d 1452, 1458 (9th Cir.1995) (explaining that the FDIC is broadly authorized to take appropriate steps in dealing with distressed institutions); Rosa v. Resolution Trust Corp., 938 F.2d 383, 398 (3d Cir.), cert. denied, 502 U.S. 981, 112 S.Ct. 582, 116 L.Ed.2d 608 (1991).

Essential to these enumerated powers is the FDIC's ability to carry out its basic functions as a receiver free from judicial restraint, pursuant to 12 U.S.C. § 1821(j). Section 1821(j), entitled "Limitation on court action," states that "[e]xcept as provided in this section, no court may take any action, except at the request of the Board of Directors by regulation or order, to restrain or affect the exercise of powers or functions of the [FDIC] as a conservator or a receiver."

It is well-established that § 1821(j) bars restraint by the courts on the statutory powers of the FDIC when it acts as receiver. See In re Landmark Land Co., 973 F.2d 283, 290 (4th Cir.1992) (stating that the comprehensive scheme of FIRREA, which includes 12 U.S.C. § 1821(j), indicates Congress' intent to allow the RTC full reign in exercising its statutory authority without injunctive restraints imposed by the courts); Ward v. Resolution Trust Corp., 996 F.2d 99, 102–04 (5th Cir.1993) (stating that the RTC is free to liquidate receivership assets without being encumbered by the possibility of injunctive actions, and further explaining that rescission is even more problematic than an injunction); Telematics Int'l, Inc. v. NEMLC Leasing Corp., 967 F.2d 703, 705 (1st Cir. 1992).

## B. Application of the FDIC's Powers as a Receiver to the Present Case

Because the FDIC was acting within its statutory powers as receiver for ADSB when it sold the HUD partnerships, the district court acted properly in dismissing plaintiff's action to rescind these sales.

Sahni alleges that the FDIC was not acting in its capacity as receiver for ADSB when the FDIC sold the HUD partnerships, but rather in its capacity as general partner of American Diversified Partners (ADP). However, Sahni is mistaken. All of the assets sold by the FDIC were part of the receivership estate of ADSB.[3] Therefore, the FDIC was acting as receiver when it sold the HUD partnerships. See Bender v. CenTrust Mortgage Corp., 833 F.Supp. 1525, 1536–37 (S.D.Fla.1992) (stating that the as-

3. The HUD partnerships were sold as part of the ADSB receivership estate by virtue of the follow-

sets of a wholly owned subsidiary are clearly the assets of its parent corporation and that FIRREA empowers the FDIC to sell a failed institutions's assets, whatever they may be, free from judicial interference), *appeal dismissed,* 51 F.3d 1027 (1995); *In re Landmark Land Co.,* 973 F.2d 283, 290 (4th Cir. 1992) (holding that the district court lacked jurisdiction to enjoin the RTC, acting as conservator of a failed thrift, from exercising its ownership rights over the thrift's subsidiaries).

The granting of Sahni's request in the present case to rescind the asset sales by the FDIC would constitute an improper judicial restraint on the FDIC in violation of § 1821(j). *See Ward v. Resolution Trust Corp.,* 996 F.2d 99, 104 (5th Cir.1993) (holding that § 1821(j) deprives a district court from enjoining or rescinding a sale by the RTC of the assets of a failed thrift).

In sum, the FDIC was acting well within its broad statutory powers as receiver when it sold the HUD partnerships. Therefore, 12 U.S.C. § 1821(j) bars the remedy of rescission sought by Sahni. The district court was correct to dismiss Sahni's complaint pursuant to § 1821(j).

### III. *California Corporations Code § 15509*

■ Sahni asserts that the FDIC violated California Corporations Code § 15509 by failing to attain Sahni's consent, as limited partner, to the sale of the HUD partnerships. Cal. Corp.Code § 15509 provides in pertinent part that, "a general partner shall ... without the written consent or ratification of the specific act by all the limited partners ... have no authority to ... (b) Do any act which would make it impossible to carry on the ordinary business of the partnership.".

Plaintiff is mistaken in his application of Cal. Corp.Code § 15509 to the facts in the present case. Section 15509 addresses the rights, powers, and liabilities of general part-

ners. However, when the FDIC sold the HUD partnerships, the FDIC was not acting as a general partner, but rather in its capacity as receiver pursuant to 12 U.S.C. § 1821(d). Therefore, Cal. Corp.Code § 15509 is not applicable to the facts in this case.

■ Moreover, even if Cal. Corp.Code § 15509 was applicable to the facts in the present case, it would be preempted by federal law. Congress has explicitly authorized the FDIC to "transfer any asset or liability of the institution in default ... without any approval, assignment, or *consent* with respect to such transfer." 12 U.S.C. § 1821(d)(2)(G)(i)(II) (emphasis added). Therefore, Cal. Corp.Code § 15509 conflicts with 12 U.S.C. § 1821(d) on the issue of consent. To the extent that a conflict between state and federal law makes compliance with both impossible, preemption dictates that federal law controls. *California v. ARC Am. Corp.,* 490 U.S. 93, 100-01, 109 S.Ct. 1661, 1664-65, 104 L.Ed.2d 86 (1989). Because Congress specifically exempted the FDIC from having to obtain any consent when effectuating the sale or transfer of receivership assets pursuant to 12 U.S.C. § 1821(d), Cal. Corp.Code § 15509 is preempted in this case. *See Resolution Trust Corp. v. Diamond,* 45 F.3d 665, 675 (2d Cir.) (holding that to the extent the anti-eviction provisions of New York's rent regulations interfere with the operation of 12 U.S.C. § 1821(e), the state regulations are preempted by FIRREA), *cert. denied sub nom. Solomon v. Resolution Trust Corp.,* — U.S. ——, 115 S.Ct. 2609, 132 L.Ed.2d 853 *and Pattullo v. Resolution Trust Corp.,* — U.S. ——, 115 S.Ct. 2609, 132 L.Ed.2d 853 (1995); *NVMercure Ltd. Partnership v. Resolution Trust Corp.,* 871 F.Supp. 488, 491 (D.D.C.1994); *Resolution Trust Corp. v. Charles House Condominium Ass'n,* 853 F.Supp. 226, 230 (E.D.La.1994).

Finally, courts have applied § 1821(j) to insulate the actions of the FDIC as receiver from restraint, even where the receiver is

ing chain of ownership: (1) ADSB owned American Diversified Investment Corporation (ADIC); (2) ADIC was the general partner of American Diversified Partners (ADP); (3) ADP owned the HUD partnerships; (4) Therefore, the HUD partnerships were the assets of ADSB.

alleged to have violated state law and equitable remedies are available. *See Volges v. Resolution Trust Corp.*, 32 F.3d 50, 52 (2d Cir.1994) (refusing to enjoin a receiver's sale of mortgages even though the sale might violate state contract law because receivers have broad powers to dispose of the assets of a failed institution as they see fit), *cert. denied*, — U.S. —, 115 S.Ct. 2618, 132 L.Ed.2d 860 (1995); *Gross v. Bell Sav. Bank*, 974 F.2d 403, 407–08 (3d Cir.1992) (holding that when the RTC performs functions assigned to it by statute, injunctive relief will be denied even when the RTC is acting in violation of other statutory schemes).

In sum, Cal. Corp.Code § 15509 is inapplicable to the facts in this case and does not affect the FDIC's broad statutory powers as receiver.

## IV. *Conclusion*

The decision of the district court is AFFIRMED.