RAWLINSON, Circuit Judge,
dissenting:
I respectfully dissent. In my view, our prior opinion in Sahni v. American Diversified Partners, 83 F.3d 1054 (9th Cir. 1996) dictates the outcome of this case. Because there is no principled distinction between preemption of a state statute and preemption of state common law, I would reverse the district court’s decision.
This case involves the once familiar scenario of a failed bank that has been taken over by the Federal Deposit Insurance Corporation (FDIC) acting as receiver. Congress enacted the Financial Institutions Reform, Recovery and Enforcement Act of 1989 (FIRREA) to facilitate the takeover of failed banks by the FDIC. See Deutsche Bank Nat’l Trust Co. v. FDIC, 744 F.3d 1124, 1128 (9th Cir.2014). By enacting this legislation, Congress sought to avoid a prolonged transition period during which bank depositors were deprived of access to their funds. See id. It was Congress’ intent that the FDIC be able “to move quickly and without undue interruption.” Id. As part of FIRREA, Congress acted with the intent to impose “a broad limit on the power of courts to interfere with the FDIC’s efforts.” (citation and alteration omitted).
In Sahni, the plaintiff sued the FDIC, seeking to rescind the sale of certain limited partnerships that were sold by the FDIC as part of the liquidation of a failed bank. See Sahni, 83 F.3d at 1056. Plaintiff asserted that the FDIC’s sale of the partnerships violated California Corporations Code § 15509, which specified that consent of all limited partners was required before disposing of the assets. See id. at 1059. We held that 12 U.S.C. § 1821(d), a section of the FIRREA statute, preempted the state statute requiring consent. See id.; see also 12 U.S.C. § 1821(d)(2)(G)(i)(II) (providing that the FDIC as receiver may “transfer any asset or liability of the institution in default (including assets and liabilities associated with any trust business) without any approval, assignment, or consent with respect to such transfer”).
In this case, Plaintiff Bank of Manhattan, successor in interest to Professional Business Bank, seeks to prosecute a breach of contract action against the FDIC following the FDIC’s takeover of a failed bank. That failed bank, First Heritage, had entered into a Loan Purchase Agreement with Professional Business Bank under which First Heritage acquired a 50% interest in a loan that Professional Business Bank made to one of its commercial customers. After Heritage Bank failed and was placed into FDIC receivership, FDIC sold the Loan Purchase Agreement as part of its liquidation of Heritage Bank’s assets. Professional Business Bank asserted in its action that the FDIC’s sale of the Loan Purchase Agreement without Professional Business Bank’s consent breached the Loan Purchase Agreement, which provided Professional Business Bank rights of consent and first refusal.
I cannot agree that the FDIC should be liable to Manhattan Bank for damages *1139 when FIRREA expressly provides that the FDIC may transfer assets without consent as part of its liquidation of a failed financial institution. See 12 U.S.C. § 1821(d)(2)(G)(i)(II). More particularly, as we recognized in Battista v. FDIC, 195 F.3d 1113, 1116 (9th Cir.1999), even when the FDIC has completely repudiated a contract, damages are limited to “actual direct compensatory damages” rather than the anticipatory damages represented by a right of first refusal. See 12 U.S.C. § 1821(e)(3)(B) (clarifying that the phrase “actual direct compensatory damages does not include ... damages for lost profits or opportunity”).
I am not persuaded by the majority’s reliance on Sharpe v. FDIC, 126 F.3d 1147 (9th Cir.1997). Sharpe did not involve the provision of FIRREA we address in this case, i.e., the ability of the FDIC as receiver to transfer assets without approval. See id. at 1154 (addressing the issue of whether 12 U.S.C. § 1821(j) deprives the court of jurisdiction over plaintiffs’ claim). In addition, the plaintiffs in Sharpe had, before the receivership, fully performed their obligations under the contract with the bank. See id. at 1152 (“Pursuant to the settlement agreement, the Sharpes delivered a reconveyance of the debtor’s deed of trust and the debtor’s promissory note to Pioneer Bank”). Despite the bank’s obligation to pay the Sharpes $510,000 via a wire transfer once the documents were delivered, the bank tendered payment in the form of two cashier’s check, which the FDIC refused to honor after the bank was seized by bank regulators on the same day payment was tendered. See id. at 1151-52. It was in this context, completed performance of a contract, that we allowed plaintiffs’ claims to proceed. Nothing in the holding or reasoning of Sharpe supports the notion of judicial interference with the transfer of assets as expressly permitted by 12 U.S.C. § 1821(d) (2) (G) (i) (II). And nothing in the holding or reasoning of Sharpe calls into question the provision of 12 U.S.C. § 1821(e)(3)(B) precluding the award of damages for lost profits or opportunity, such as the right of first refusal at issue in this case. Indeed, we have repeatedly emphasized the limited holding of Sharpe. See Battista, 195 F.3d at 1119 (distinguishing Sharpe); see also McCarthy v. FDIC, 348 F.3d 1075, 1078, 1081 (9th Cir.2003) (describing Sharpe as an “unusual case” “arising out of a breach of contract fully performed by the aggrieved party but not repudiated by the receiver”); 1077 (characterizing Sharpe as arising in a “different context [ ] and ... not controlling”); Deutsche Bank, 744 F.3d at 1135 (“Given that we have limited Sharpe’s reach even in the administrative exhaustion context, it would be illogical for us to expand Sharpe to more substantive provisions, such as 12 U.S.C. § 1821(d)(11), that were not at issue or addressed in Sharpe....”) (citations omitted); 1137 (limiting Sharpe to its particular facts). It is particularly telling that the decision in Sharpe did not even attempt to distinguish Sahni.
Similarly, the case from the D.C. Circuit cited in Sharpe, Waterview Mgmt. Co. v. FDIC, 105 F.3d 696 (D.C.Cir.1977) does not grapple with our decision in Sahni. Rather, it relegates our precedent to a footnote suggesting that the partnership status of the bank’s interest is determinative. See id. at 700 n. 3. Neither does Waterview Mgmt. account for the limitation in 12 U.S.C. § 1821(e)(3)(B) precluding liability for lost profits or opportunity.
Because Sahni is inconsistent with the majority’s holding, and because neither Sharpe nor Waterview Mgt. addresses the rationale of Sahni or the prohibition on damages for lost opportunities set forth in 12 U.S.C. § 1821(e)(3)(B), the majority’s reliance on this trilogy of cases as representing a clear statement limiting FIR- *1140 REA’s preemption is simply not compelling. Rather, we have consistently taken a contrary view, acknowledging the broad powers conferred upon the FDIC in FIR-REA and the corresponding limited reach of courts in this arena. See Sharpe, 126 F.3d at 1154; see also McCarthy, 348 F.3d at 1079 (“[T]he § 1821(d) jurisdictional bar is not limited to claims by creditors but extends to all claims and actions against, and actions seeking a determination of rights with respect to, the assets of failed financial institutions for which the FDIC serves as receiver, including debtors’ claims.”); Deutsche Bank, 744 F.3d at 1128 (“Congress granted the FDIC broad powers in conserving and disposing of the assets of the failed institution. To enable the FDIC to move quickly and without undue interruption to preserve and consolidate the assets of the failed institution, Congress enacted a broad limit on the power of courts to interfere with the FDIC’s efforts.”) (citation and alteration omitted) (emphases added).
Finally and significantly, allowing option holders to sue the FDIC for damages due to lost opportunities is at cross purposes with the heart of FIRREA. See United States v. Banks, 506 F.3d 756, 763 (9th Cir.2007) (interpreting a statute in the context of its purpose). It is well known that “Congress’ core purposes in enacting FIR-REA [were] to ensure that the assets of a failed institution are distributed fairly and promptly among those with valid claims against the institution, and to expeditiously wind up the affairs of failed banks.” McCarthy, 348 F.3d at 1079; see also Deutsche Bank, 744 F.3d at 1128 (noting Congress’ intent that the FDIC be able “to move quickly and without undue interruption”). Allowing breach of contracts actions to proceed against the FDIC outside the strictures of FIRREA would bring the windup of the affairs of failed banks to a screeching halt, pending the outcome of litigation. This result is the very antithesis of the limitation on court involvement contemplated by Congress. See Deutsche Bank, 744 F.3d at 1128.
In sum, because no principled basis exists upon which to distinguish our precedent as set forth in Sahni, because Sharpe is a unique case that is limited to its particular facts, because FIRREA does not countenance damages actions for lost opportunities, and because allowing a breach of contract action against the FDIC would be contrary to Congress’ purpose in enacting FIRREA, I would reverse the district court’s ruling that FIRREA did not preempt Bank of Manhattan’s claim. I respectfully dissent.