*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

GEORGE DERNIS and MARIA DERNIS,

        Plaintiffs-Appellees,

v

AMOS FINANCIAL, LLC,

        Defendant-Appellant,

and

PREMIER BANK OF WILMETTE, DR.
ZULFIKAR ESMAIL, SHAMIM ESMAIL,
FEDERAL DEPOSIT INSURANCE
CORPORATION, STEARNS BANK N.A., and
ANDREW J. ABRAMS,

        Defendants,

and

STEFANOS PEROUSTIANIS, Individually and as
Cotrustee of the DESPINA PEROUSTIANIS
TRUST, MARIA PEROUSTIANIS DERNIS,
Cotrustee of the DESPINA PEROUSTIANIS
TRUST, and HELEN PEROUSTIANIS PARISI,
Cotrustee of the DESPINA PEROUSTIANIS
TRUST,

        Intervenors-Appellees.

UNPUBLISHED
January 28, 2021

Nos. 350862; 352014
Allegan Circuit Court
LC No. 15-054718-CZ

GEORGE DERNIS and MARIA DERNIS,

        Plaintiffs-Appellants/Cross-Appellees,

-1-

v

No. 350902
Allegan Circuit Court
LC No. 15-054718-CZ

AMOS FINANCIAL, LLC,

Defendant-Appellee/Cross-Appellant,

and

PREMIER BANK OF WILMETTE, DR.
ZULFIKAR ESMAIL, SHAMIM ESMAIL,
FEDERAL DEPOSIT INSURANCE
CORPORATION, STEARNS BANK N.A., and
ANDREW J. ABRAMS,

Defendants,

and

STEFANOS PEROUSTIANIS, Individually and as
Cotrustee of the DESPINA PEROUSTIANIS
TRUST, MARIA PEROUSTIANIS DERNIS,
Cotrustee of the DESPINA PEROUSTIANIS
TRUST, and HELEN PEROUSTIANIS PARISI,
Cotrustee of the DESPINA PEROUSTIANIS
TRUST,

Intervenors.

Before: SHAPIRO, P.J., and SAWYER and BECKERING, JJ.

PER CURIAM.

Plaintiffs initiated the current action in March 2015, seeking to prevent defendant Amos Financial, LLC, from foreclosing on two properties in Douglas, Michigan. Third-party intervenor, the Despina Peroustianis Trust, also owned an interest in one of the properties, and intervenors likewise sought to prevent foreclosure. In addition, plaintiffs and intervenors collectively sought more than $100 million in damages, largely relating to business dealings and losses related to grocery stores in Illinois. In 2017, the trial court entered a default against Amos Financial after Amos Financial's attorney failed to appear at a hearing on cross-motions for summary disposition. In May 2019, the trial court entered two orders, transferring the Michigan properties back to plaintiffs and intervenors. Later, following a six-day hearing on damages, in September 2019, the trial court entered an order denying requests for economic damages, but awarding $100,000 in exemplary damages to plaintiffs and $100,000 in exemplary damages to third-party intervenor, Stefanos Peroustianis, in his individual capacity. In postjudgment orders, the trial court also

awarded partial attorney fees and costs to plaintiffs and intervenors. Both Amos Financial and plaintiffs appeal as of right.[1]

For the reasons explained in this opinion, we conclude that the circuit court lacked jurisdiction over the majority of plaintiffs' and intervenors' claims and that the trial court abused its discretion by denying Amos Financial's motion to set aside the default. We also conclude that Stefanos Peroustianis is not a real party in interest and that he should be dismissed from the case in his individual capacity. Accordingly, we vacate the default against Amos Financial as well as the circuit court's subsequent orders, including those regarding damages, attorney fees, and the return of the properties, and we remand for a determination of Amos Financial's liability on the merits of the limited claims within the circuit court's jurisdiction.

## I. FACTS AND PROCEDURAL HISTORY

In 2004, plaintiff George Dernis obtained a loan from defendant Premier Bank of Wilmette to finance the purchase of a grocery store and shopping center in Illinois. To secure the 2004 loan, George and his wife Maria Dernis, along with Stefanos and Despina Peroustianis (Maria's parents) through the Despina Peroustianis Trust, granted Premier Bank a mortgage on their real property located at 741 Center Street, Douglas, Michigan, among other collateral. In 2008, George purchased a property located at 19-23 Water Street, in Douglas, Michigan, and financed the purchase through a loan from Premier Bank. The Water Street property served as collateral for the 2008 loan, and in addition, the loan was cross-collateralized with other loans, thereby also including the Center Street property as collateral. However, with regard to these loans and the mortgages on the Center Street and Water Street properties, plaintiffs and intervenors assert a host of wrongdoing by Premier Bank, including allegations that Premier Bank forged documents, some of which resulted in cross-collateralization. They also maintain that Premier Bank agreed to release the properties as collateral.

At one time, George owned, or partly owned, several corporate entities, and the corporate entities in turn owned several grocery stores in Illinois. In connection with these grocery stores, George had numerous business dealings with Premier Bank, involving more than $23 million in loans. However, by George's own admissions, he made his last loan payment—on any loan obtained from Premier Bank—in February 2011. Unfortunately, the grocery stores went into bankruptcy, and George and Stefanos both also declared bankruptcy. Plaintiffs and intervenors

---

[1] There are currently three appeals before this Court. In Docket No. 350862, Amos Financial appeals as of right the September 12, 2019 order regarding damages. Plaintiffs appeal this same order as of right in Docket No. 350902, contending that they are entitled to additional damages. And Amos Financial filed a cross-appeal in Docket No. 350902, raising the same issues as the appeal in Docket No. 350862. Finally, in Docket No. 352014, Amos Financial appeals as of right the December 5, 2019 postjudgment orders awarding attorney fees. The three appeals have been consolidated by this Court. *Dernis v Amos Financial*, unpublished order of the Court of Appeals, entered November 5, 2019 (Docket Nos. 350862 and 350902); *Dernis v Amos Financial*, unpublished order of the Court of Appeals, entered August 25, 2020 (Docket Nos. 350862, 350902, and 352014).

attribute their financial problems and the financial downfall of the grocery stores to wrongdoing by Premier Bank, including various fraudulent and criminal acts.

On March 23, 2012, the Illinois Department of Financial and Professional Regulation Division of Banking closed Premier Bank and appointed the Federal Deposit Insurance Corporation (FDIC) as receiver.[2] In November 2014, the FDIC, acting as receiver for Premier Bank, sold the loans relating to the Michigan properties to Amos Financial as part of a "loan pool" sale. The FDIC also granted Brian Donegan, general counsel for Amos Financial, a limited power of attorney, and acting under the power of attorney, Donegan assigned the mortgages on the Center Street and Water Street properties to Amos Financial. In February 2015, Amos Financial pursued foreclosure by advertisement on both Michigan properties.

In March 2015, plaintiffs filed the current case against Amos Financial to prevent the foreclosures on the Michigan properties and to obtain monetary damages, including damages related to the loss of the grocery stores in Illinois.[3] In total, plaintiffs' complaint contained 15 counts, including violations of the Michigan foreclosure statutes, various claims of fraud, false pretense, forgery, violations of various consumer-protection statutes, conversion, unjust enrichment, conspiracy, and violations of the Racketeer Influences and Corrupt Organizations Act (RICO), 18 USC 1961 *et seq.* Intervenors' complaint—though only containing four counts— similarly sought to prevent the foreclosures and to obtain monetary damages. In large part, the complaints recounted allegations involving Premier Bank's scheme of fraud and other wrongdoing aimed at stripping George of the grocery stores and other assets.

With regard to Amos Financial, plaintiffs and intervenors essentially maintained that Amos Financial could be held liable for purchasing "bad debt" and "continuing" the fraud by attempting to foreclose despite knowledge of Premier Bank's fraudulent conduct. Additionally, plaintiffs and intervenors disputed the validity of the FDIC's assignment to Amos Financial, contending that Donegan lacked authority and was a "robo-signer" without requisite personal knowledge to execute the assignments. Aside from matters involving Premier Bank and the FDIC, plaintiffs and intervenors also challenged Amos Financial's compliance with the foreclosure statute in terms of

---

[2] The Esmails and other individuals from Premier Bank were criminally indicted, and Zulfikar Esmail eventually pleaded guilty in Illinois to (1) financial institution fraud, involving defrauding Premier Bank, and (2) theft by deception from the United States Treasury Department.

[3] Aside from Amos Financial, plaintiffs' and intervenors' complaints named several other defendants, none of whom are parties to this appeal. The FDIC removed the case to federal court and was thereafter dismissed on jurisdictional grounds because plaintiffs failed to exhaust administrative remedies. See *Dernis v Amos Fin*, 701 Fed App'x 449, 454-456 (CA 6, 2017); *Dernis v Amos Fin, LLC*, unpublished order of the United States District Court for the Western District of Michigan, entered May 13, 2016 (Case No. 1:16-cv-64). A default entered against Premier Bank, and defendants Zulfikar and Shamim Esmail, Stearns Bank, N.A., and Andrew Abrams were eventually dismissed without prejudice.

the notice given regarding the foreclosures, the propriety of foreclosing when other civil actions remained pending in Illinois, and the ability to foreclosures by advertisement under Illinois law.

The case has a lengthy procedural history. Most relevant to this appeal, in 2017, the trial court entered a default against Amos Financial and granted summary disposition to plaintiffs and intervenors because Amos Financial's attorney failed to appear at a hearing on cross-motions for summary disposition.[4] The trial court later denied Amos Financial's motion to set aside the default. The trial court later entered two orders, transferring the Michigan properties—which by that time had been sold at a sheriff's sale to Amos Financial—back to plaintiffs and intervenors.[5] Following a six-day hearing on damages, on September 12, 2019, the trial court then entered an order regarding damages, denying economic damages but awarding exemplary damages as noted earlier. In orders dated December 5, 2019, the trial court also awarded partial attorney fees and costs to plaintiffs and intervenors. These appeals followed.

## II. CIRCUIT COURT'S JURISDICTION

On appeal, Amos Financial first argues that the circuit court lacked jurisdiction over many of plaintiffs' and intervenors' claims, which although ostensibly pleaded against Amos Financial, actually related to the acts or omissions of Premier Bank or the FDIC.[6] Amos Financial maintains that the Financial Institution Reform, Recovery and Enforcement Act of 1989 (FIRREA), PL 101-73, required plaintiffs and intervenors to exhaust administrative proceedings relating to these

---

[4] Amos Financial's attorney arranged for local counsel to appear at the hearing, but the substitute counsel had no knowledge of the case.

[5] Although the properties had been sold, the redemption periods had not expired because the trial court had previously entered a stipulated order extending the redemption periods.

[6] Plaintiffs assert that this jurisdictional issue, and other issues raised by Amos Financial, are outside the scope of appeal in Docket Nos. 350862 and 350902, which both involve appeals of the September 12, 2019 order awarding damages. According to plaintiffs, Amos Financial should have appealed earlier orders, such as the order denying the motion to set aside the default or, at the latest, the order denying Amos Financial's motion for reconsideration of the denial of the motion to set aside the default. Contrary to plaintiffs' arguments, the first final order in this case—that is, the first order to dispose of all the claims and adjudicate the rights and liabilities of all the parties— was the September 12, 2019 order regarding damages. See MCR 7.202(6)(a)(*i*). In contrast, the earlier entry of default (establishing liability but not damages), and the orders denying the motion to set aside the default and for reconsideration, were not final orders because proceedings regarding damages remained pending. See *Children's Hosp of Mich v Auto Club Ins Ass'n*, 450 Mich 670, 676-677; 545 NW2d 592 (1996). See also *White v Sadler*, 350 Mich 511, 517; 87 NW2d 192 (1957) (explaining distinction between a default and entering a judgment on a default). Amos Financial timely appealed the September 12, 2019 final order, and having timely appealed, Amos Financial is also entitled to challenge any previous interlocutory orders and decisions of the trial court. See *Southfield Jeep, Inc v Preferred Auto Sales, Inc*, 477 Mich 1061 (2007); *Faircloth v Family Independence Agency*, 232 Mich App 391, 401; 591 NW2d 314 (1998). Plaintiffs' arguments regarding this Court's jurisdiction and scope of review lack merit.

claims and that their failure to do so deprived the courts of jurisdiction under 12 USC 1821(d)(13)(D)(*ii*). We agree.[7]

The FIRREA "grants the FDIC authority to act as receiver or conservator of a failed institution for the protection of depositors and creditors." *Benson v JPMorgan Chase Bank, NA*, 673 F3d 1207, 1211 (CA 9, 2012)."[8] The FIRREA also provides an administrative process to facilitate "the expeditious and efficient resolution of claims against failed banks." *Seaway Bank & Trust Co v J&A Series I, LLC*, 962 F3d 926, 929 (CA 7, 2020). See also *Benson*, 673 F3d at 1211. These administrative proceedings under the FIRREA have been summarized as follows:

> Upon its appointment as receiver, FDIC is required to publish notice that the failed institution's creditors must file claims with FDIC by a specified date not less than ninety days after the date of publication. 12 USC 1821(d)(3)(B). FDIC is also required to mail notice to all known creditors of the failed institution. [12 USC] 1821(d)(3)(C). It has 180 days from the date of filing to allow or disallow claims. Claimants have sixty days from the date of disallowance, or from the expiration of the 180-day administrative decision deadline, within which to seek judicial review in an appropriate United States district court. [12 USC] 1821(d)(6)(A). [*Village of Oakwood v State Bank & Trust Co*, 539 F3d 373, 384-385 (CA 6, 2008) (alterations in original).]

"[I]f a party fails to comply with the statutory time limitations, any claim that a party has 'shall be deemed to be disallowed (other than any portion of such claim which was allowed by the receiver) as of the end of such period, such disallowance shall be final, and the claimant shall have no further rights or remedies with respect to such claim.' " *Id*. at 385, quoting 12 USC 1821(d)(6)(B)(*ii*).

While providing for judicial review following administrative proceedings, the FIRREA otherwise broadly proscribes courts' jurisdiction in 12 USC 1821(d)(13)(D), which states:

---

[7] Whether a court has subject-matter jurisdiction poses a question of law, which this Court reviews de novo. *Hillsdale Co Senior Servs, Inc v Hillsdale Co*, 494 Mich 46, 51; 832 NW2d 728 (2013). "Subject-matter jurisdiction refers to a court's power to act and authority to hear and determine a case." *Usitalo v Landon*, 299 Mich App 222, 228; 829 NW2d 359 (2012). "[L]ack of jurisdiction of the subject matter may be raised at any time and the parties to an action cannot confer jurisdiction by their conduct or action nor can they waive the defense by not raising it." *Hillsdale Co Senior Servs, Inc*, 494 Mich at 51 n 3. "When a court lacks subject-matter jurisdiction to hear and determine a claim, any action it takes, other than to dismiss the action, is void." *Bowie v Arder*, 441 Mich 23, 56; 490 NW2d 568 (1992). Although jurisdiction may be raised for the first time on appeal, Amos Financial nonetheless preserved this issue by raising it before the trial court. See *Peterman v Dep't of Natural Resources*, 446 Mich 177, 183; 521 NW2d 499 (1994).

[8] Although not binding on this Court, caselaw from lower federal courts and other state courts may be considered for their persuasive value. *In re Estate of Vansach*, 324 Mich App 371, 383 n 6, 388 n 7; 922 NW2d 136 (2018).

(D) Limitation on judicial review

Except as otherwise provided in this subsection, no court shall have jurisdiction over-

(*i*) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the [FDIC] has been appointed receiver, including assets which the [FDIC] may acquire from itself as such receiver; or

(*ii*) any claim relating to any act or omission of such institution or the [FDIC] as receiver.

Reading 12 USC 1821(d)(13)(D) in conjunction with the judicial review provided in 12 USC 1821(d)(6), "every court" to have considered 12 USC 1821(d)(13)(D) has concluded that it is not an absolute bar to judicial review but instead imposes an administrative-exhaustion requirement. See *Village of Oakwood*, 539 F3d at 385, and cases therein. This administrative exhaustion requirement is jurisdictional; that is, the FIRREA "bars claimants from taking claims directly to court without first going through an administrative determination." *Seaway Bank & Trust Co*, 962 F3d at 929 (citation omitted). See also *Farnik v FDIC*, 707 F3d 717, 721 n 1 (CA 7, 2013) (noting that an attempt to bypass administrative review under FIRREA posed a "jurisdictional issue").

In this case, plaintiffs and intervenors filed their claims in Allegan Circuit Court without exhausting administrative remedies under the FIRREA. Indeed, plaintiffs do not dispute that they failed to make any attempt to pursue FIRREA's administrative process. They contend, however, that the jurisdictional restrictions in the FIRREA do not apply to this case because (1) their claims involve Amos Financial rather than the FDIC or Premier Bank and (2) the purchase agreement between Amos Financial and the FDIC makes clear that Amos Financial purchased assets without any protections afforded to the FDIC, which plaintiffs seem to contend would include FIRREA's jurisdictional limitations. These arguments lack merit.

A. PLEADING CLAIMS AGAINST AMOS FINANCIAL

Plaintiffs' argument that FIRREA's jurisdictional requirements do not apply to their claims against Amos Financial is inconsistent with 12 USC 1821(d)(13)(d)(*ii*), which provides that courts do not have jurisdiction over "*any* claim *relating to* any act or omission of [the failed bank] or the [FDIC] as receiver." (Emphasis added.) Courts considering this provision have consistently recognized that it does not apply solely to claims against the FDIC or the failed bank but also expressly applies more broadly to claims "relating to" the acts or omissions of a failed bank of the FDIC as receiver, including claims against an entity purchasing assets from the FDIC. See, e.g., *Benson*, 673 F3d at 1212; *Village of Oakwood*, 539 F3d at 386. As succinctly explained by the United States Court of Appeals for the Ninth Circuit:

Plaintiffs' assertion that FIRREA's jurisdictional bar does not apply to purchasing institutions is undermined by the plain text of § 1821(d)(13)(D)(*ii*). That provision distinguishes claims on their factual bases rather than on the identity of the defendant: It asks whether claims "relate to any act of omission" of a failed

institution or the FDIC. Notably, the provision does not make any distinction based on the identity of the party from whom relief is sought. [*Benson*, 673 F3d at 1212.]

As a result, an entity that purchases assets from the FDIC as receiver "is entitled to seek dismissal of a claim for failure to exhaust administrative remedies." *Bobick v Community & Savings Bank*, 321 Ga App 855, 864; 743 SE2d 518 (2013). See also *American First Fed, Inc v Lake Forest Park, Inc*, 198 F3d 1259, 1263 n 3 (CA 11, 1999). To conclude otherwise would allow claimants to employ strategic pleading to avoid the administrative claims process, and it would encourage the type of litigation that the FIRREA seeks to avoid. See *Village of Oakwood*, 539 F3d at 386.

Thus, in determining whether 12 USC 1821(d)(13)(D)(*ii*) applies to claims against an entity—such as Amos Financial—that purchases assets from the FDIC as the receiver of a failed bank, the question is whether the claims pleaded are claims "relating to" the acts or omission of the failed bank or FDIC as receiver. In answering this question, the focus must be "on the substance of a claim rather than its form" to determine "the actor responsible for the alleged wrongdoing." *Farnik*, 707 F3d at 722-723. Claims of "independent wrongdoing" by the purchasing entity, *id.* at 724, such as "post-purchase actions" of the successor bank, *Benson*, 673 F3d at 1209, for which neither the FDIC nor the failed bank could be "held legally responsible to pay or otherwise resolve the asserted claim," are not subject to the FIRREA's administrative exhaustion requirement, *American Nat'l Ins Co v FDIC*, 642 F3d 1137, 1142-1144; 395 US App DC 316 (2011).[9] But when a claim "is *functionally*, albeit not *formally*, against" the failed bank or the FDIC as receiver, 12 USC 1821(d)(13)(D)(*ii*) applies. See *id.* at 1144. In other words, "plaintiffs cannot circumvent FIRREA's jurisdictional bar by drafting their complaint strategically." *Id.* Mere "conclusory allegations" will not suffice to plead a claim involving a purchaser's "independent conduct." *Benson*, 673 F3d at 1209.

Caselaw provides numerous examples of the application of these principles. Of the various examples, a few standout as particularly analogous to the facts of the current case. In *Rundgren v Washington Mut Bank, FA*, 760 F3d 1056, 1064-1065 (CA 9, 2014), the Ninth Circuit applied FIRREA's jurisdictional limitations to the plaintiffs' claims that the mortgage purchased by the successor bank, on which the successor sought to foreclose, was unenforceable as a result of fraud and other misconduct by the original bank. The Court explained:

> Although the Rundgrens named Chase [the purchasing bank] as well as WaMu [the original bank] in their complaint, all claims in the complaint rest on the theory that WaMu took deceptive and fraudulent actions to induce them to enter into a loan agreement, and their mortgage and note are therefore unenforceable. The complaint makes no independent claims against Chase. A claimant cannot circumvent the exhaustion requirement by suing the purchasing bank based on the conduct of the

---

[9] Indeed, as explained by the United States Court of Appeals for the District of Columbia Circuit, the term "claim" in the FIRREA is "a term-of-art that encompasses only demands that are resolvable through the administrative process set out by FIRREA." *American Nat'l Ins Co*, 642 F3d at 1142. Claims that the purchasing entity "*alone* committed the wrongdoing" are not resolvable by the FDIC and, therefore, such claims are not a "claim" subject to the FIRREA. *Id.* at 1144 (emphasis added). See also *Benson*, 673 F3d at 1209.

failed institution. Where a claim is functionally, albeit not formally, against a depository institution for which the FDIC is receiver, it is a 'claim' within the meaning of FIRREA's administrative claims process. Accordingly, we conclude that the Rundgrens' claims relate to WaMu's acts or omissions for purposes of § 1821(d)(13)(D). [*Id*. (quotation marks and citation omitted).]

The United States Court of Appeals for the Fourth Circuit reached the same conclusion on similar facts, explaining:

Though Counts 1 and 2 are formally asserted against Chase [the purchasing bank] and U.S. Bank [a trustee], they are functionally pleaded against WMB's acts and omissions [as the original bank]. The allegations underlying Counts 1 and 2 are that WMB made misrepresentations and that the Note and Deed of Trust are defective. In particular, the Willners allege that WMB agreed not to foreclose on the Property, that the Note "does not exist" because Mrs. Willner never signed it, and that the Deed of Trust cannot be used to foreclose on the Property because the Note to which it refers does not exist. Because these unexhausted claims are functionally pleaded against the acts and omissions of WMB rather than against independent misconduct by Chase and U.S. Bank, § 1821(d)(13)(D)(ii) operates as a jurisdictional bar. [*Willner v Dimon*, 849 F3d 93, 104 (CA 4, 2017).]

The United States Court of Appeals for the Third Circuit similarly applied FIRREA's jurisdictional bar to claims that a purchasing bank had an independent, postpurchase obligation to permit cancellation of a loan because the original bank failed to provide proper notices during the loan origination process. *Tellado v IndyMac Mtg Servs*, 707 F3d 275, 277-278, 280 (CA 3, 2013). In finding that these claims related to the failed bank and were not an independent wrong of the successor, the court explained:

[T]he Tellados' claim is functionally, albeit not formally, against IndyMac [the original lender]. The Tellados characterize their claim as a claim against OneWest [the successor bank] for its own misconduct, pointing to OneWest's failure to cancel the loan in response to the Tellados' August 2009 notice of cancellation. However, as the District Court correctly held, the Tellados' notice of cancellation was valid only because IndyMac had failed to provide proper notice of the right to cancel and as a result the cancellation period had not begun to run. Without IndyMac's wrongdoing, the Tellados would have no right to cancel and therefore no claim. Thus, the Tellados' claim is not a claim of independent misconduct by OneWest; rather, it relates to an act or omission of the depository institution, IndyMac, and is, therefore, jurisdictionally barred under section 1821(d)(13)(D)(*ii*). [*Id*. at 280.]

Returning to the facts of this case, most of plaintiffs and intervenors' claims—relating to the acts and omission of Premier Bank and the FDIC—are subject to FIRREA's administrative exhaustion requirement, and the circuit court, therefore, lacked jurisdiction over these claims under 12 USC 1821(d)(13)(D)(*ii*). The vast majority of the allegations in plaintiffs' and intervenors' respective complaints relate to wrongdoing allegedly perpetrated by Premier Bank as part of a multipart scheme to strip George Dernis and his grocery store companies of their assets. Premier

Bank is alleged to have engaged in various unethical and illegal banking practices, leading to the demise of the grocery stores and personal bankruptcy by George and Stefanos. Premier Bank is also specifically alleged to have forged loan modifications and other documents (including documents resulting in cross-collateralization). And the mortgage on the Center Street property is alleged to be defective because Premier Bank purportedly agreed to the release of property as collateral. As part of its scheme, Premier Bank also allegedly endeavored to force George to become "wholly reliant" on Premier Bank for banking services and financing. Once George was reliant on Premier Bank, Premier Bank "suddenly and unjustly" cut off funding, forcing George's companies into bankruptcy. Premier Bank's scheme allegedly culminated with Premier Bank filing lawsuits in Illinois and beginning foreclosure proceedings on the Michigan properties.

However, there is no evidence that Amos Financial had any involvement in Premier's scheme. Amos became involved only after the FDIC became receiver of Premier Bank's assets. While plaintiffs and intervenors make conclusory allegations of "conspiracy" between Premier Bank, the FDIC, and Amos Financial, these conclusory allegations fail to adequately allege independent conduct by Amos Financial that would move these claims outside FIRREA's administrative framework. See *Benson*, 673 F3d at 1209, 1215. Plaintiffs and intervenors also accuse Amos Financial of seeking to profit from Premier Bank's misconduct, and they maintain that Amos Financial may be held independently liable for essentially purchasing "bad debt" and attempting to foreclose on the basis of defective mortgages and void notes, but such claims inherently relate to Premier Bank's conduct. See *Willner*, 849 F3d at 104; *Farnik*, 707 F3d at 723-724; *Benson*, 673 F3d at 1215. That is, all defects in the notes and mortgages as alleged in this case are a result of Premier Bank's forgery or other conduct. As such, plaintiffs' and intervenors' claims against Amos Financial on the basis of these defects do not involve independent wrongdoing by Amos Financial. See *Willner*, 849 F3d at 104; *Rundgren*, 760 F3d at 1064-1065; *Tellado*, 707 F3d at 280. Because the substance of plaintiffs' and intervenors' claims relate to wrongdoing by Premier Bank, plaintiffs and intervenors cannot circumvent FIRREA's jurisdictional bar by strategically pleading these claims against Amos Financial rather than Premier Bank. See *Farnik*, 707 F3d at 723-724; *American Nat'l Ins Co*, 642 F3d at 1144. Accordingly, because plaintiffs and intervenors failed to exhaust administrative remedies under the FIRREA, 12 USC 1821(d)(13)(D)(*ii*) bars all plaintiffs' and intervenors' claims relating to Premier Bank's conduct.

Aside from claims relating to misconduct by Premier Bank, plaintiffs and intervenors also raise claims relating to the FDIC as receiver. For example, plaintiffs and intervenors faulted the FDIC for continuing collection and foreclosure actions while knowing of Premier Bank's wrongful and fraudulent conduct, and they also challenged the validity of the chain of title that the FDIC transferred to Amos Financial. Again, claims involving defects in the notes and mortgages, and challenges to foreclosures on the basis of the alleged defects in these documents, are subject to the FIRREA administrative procedures because they relate to Premier Bank's acts and omissions. See *Willner*, 849 F3d at 104; *Rundgren*, 760 F3d at 1064-1065. Pleading these allegations against the FDIC does not change this result, particularly when claims relating to the FDIC as receiver are also subject to 12 USC 1821(D)(13)(D)(*ii*). Additionally, plaintiffs and intervenors also specifically contend that the assignments from the FDIC to Amos Financial were invalid because Donegan, who executed the assignments under a limited power of attorney from the FDIC, was a "robo-signer" without requisite authority or personal knowledge. However, although pleaded against Amos Financial, these claims involving the validity of the FDIC's assignments—

transferring assets held by the FDIC as receiver to Amos Financial—are "directly related to acts or omissions of the FDIC as the receiver of" Premier Bank, and consequently, these claims are also barred by 12 USC 1821(d)(13)(d)(*ii*). See *Village of Oakwood*, 539 F3d at 386; *Acosta-Ramirez v Banco Popular de Puerto Rico*, 712 F3d 14, 21 (CA 1, 2013). See also *Sahni v American Diversified Partners*, 83 F3d 1054, 1058 (CA 9, 1996), as amended July 24, 1996 (recognizing that the FDIC's powers as receiver include authority to transfer assets and liabilities).[10]

The only claims that involve independent conduct by Amos Financial are the postpurchase actions by Amos Financial involving alleged violation of the foreclosure statutes during the foreclosures on the Water Street and Center Street properties. See *Farnik*, 707 F3d at 723-724; *Benson*, 673 F3d at 1209. Specifically, in Count 1 of their respective complaints, plaintiffs and intervenors alleged, in relevant part, that the foreclosure by advertisement proceedings initiated by Amos Financial in Michigan were improper because (1) Illinois law should apply and Illinois does not permit foreclosure by advertisement, (2) MCL 600.3204 does not permit foreclosure when there is a pending action (and lawsuits filed in Illinois remained pending), and (3) there were errors in the notices of foreclosure given by Amos Financial. These particular claims relating to Amos Financial's postpurchase efforts to foreclose on the Water Street and Center Street properties are the *only* claims by plaintiffs and intervenors that involve independent conduct by Amos Financial that does not relate to the acts or omissions of Premier Bank or the FDIC as receiver. See *Farnik*, 707 F3d at 723-724; *Benson*, 673 F3d at 1209; *American Nat'l Ins Co*, 642 F3d at 1144. Consequently, these are the only claims not subject to FIRREA's administrative requirements, and these are the only claims not jurisdictionally barred by 12 USC 1821(d)(13)(D)(*ii*).[11]

## B. THE PURCHASE AGREEMENT'S EFFECT ON JURISDICTION

Aside from the general assertion that the FIRREA does not apply to Amos Financial, plaintiffs also argue on appeal that Amos Financial specifically agreed to forgo any jurisdictional argument by entering into the loan sale agreement with the FDIC. Plaintiffs contend that § 5.18 of the sale agreement between Amos Financial and the FDIC precludes Amos Financial from asserting any rights under the FIRREA. In relevant part, this provision states:

> **5.18. Use of FDIC's Name and Reservation of Statutory Powers.** Buyer agrees that it will not use or permit the use by its agents, successors or assigns of any name or combination of letters that is similar to FDIC or the Federal Deposit Insurance Corporation. Buyer will not represent or imply that it is affiliated with,

---

[10] In any event, plaintiffs and intervenors lack standing to challenge the assignments from the FDIC to Amos Financial on the basis of Donegan's alleged fraud or robo-signing improprieties. See *Bowles v Oakman*, 246 Mich 674, 679; 225 NW 613 (1929). See also *Carmack v Bank of New York Mellon*, 534 Fed App'x 508, 512 (CA 6, 2013).

[11] In contrast, all other claims—including those involving forgery, false pretense, invalid assignments or improper chain of title, release, fraud and misrepresentation, conspiracy, conversion, unjust enrichment, RICO claims, and violations of various consumer protections statutes—relate to the acts or omissions of Premier Bank or the FDIC as receiver, meaning that these claims are barred by 12 USC 1821(d)(13)(D)(*ii*).

authorized by or in any way related to FDIC. Seller specifically permits Buyer to assert the statute of limitations established under 12 U.S.C. § 182l(d)(14) pursuant to the terms of the Assignment and Assumption of Interests and Obligations. However, Buyer acknowledges and agrees that the assignment of any Loan or Collateral Document pursuant to the terms of this Agreement shall not constitute the assignment of any other rights, powers or privileges granted to Seller pursuant to the provisions the Federal Deposit Insurance Act, including, without limitation, those granted pursuant to 12 U.S.C. § 1821(d), 12 U.S.C. § 1823(e) and 12 U.S.C. § 1825, all such rights and powers being expressly reserved by Seller; nor, shall Buyer assert or attempt to assert any such right, power or privilege in any pending or future litigation involving any Loan purchased hereunder. . . .

Relying on this provision, plaintiffs maintain that Amos Financial did not acquire any rights, powers, or privileges of the FDIC under the FIRREA. Although plaintiffs' argument is not well-developed, it appears to assume that the jurisdictional bar in 12 USC 1821(d)(13)(D)(*ii*) constitutes a right, power, or privilege granted to the FDIC under the FIRREA.

However, a court's subject-matter jurisdiction—or lack thereof—is not a right, power, or privilege granted to the FDIC under the FIRREA. Rather 12 USC 1821(d)(13)(D)(*ii*) is a jurisdictional provision that applies to *any* claim relating to the failed banking institution or the FDIC as receiver, including claims styled as claims against a successor bank. See *Benson*, 673 F3d at 1212; *Village of Oakwood*, 539 F3d at 386. And as a limit on jurisdiction, this rule cannot be altered or waived by the parties. See *Hillsdale Co Senior Servs, Inc v Hillsdale Co*, 494 Mich 46, 51 n 3; 832 NW2d 728 (2013). Accordingly, we reject plaintiffs' arguments related to § 5.18 because this contractual provision did not, and could not, confer jurisdiction on the circuit court in contravention of 12 USC 1821(d)(13)(D)(*ii*). See *Olde Towne Tyrone, LLC v Multibank 2009-1 CRE Venture, LLC*, 326 Ga App 322, 328-329; 756 SE2d 558 (2014) (rejecting similar argument that FIRREA's jurisdictional provision did not apply in light of an agreement reserving the FDIC's "rights, powers or privileges" granted under the FIRREA, including 12 USC 1821(d)).

In sum, given that plaintiffs and intervenors failed to exhaust their administrative remedies under the FIRREA, the circuit court lacked jurisdiction over all claims relating to the acts or omissions of Premier Bank or the FDIC as receiver. See 12 USC 1821(d)(13)(D)(*ii*). And contrary to plaintiffs' arguments on appeal, the jurisdictional prohibitions in the FIRREA were not obviated—and could not have been waived or altered—by the loan sale agreement between Amos Financial and the FDIC. Because the circuit court lacked jurisdiction under the FIRREA, its orders relating to those claims outside its jurisdiction are void. See *Bowie v Arder*, 441 Mich 23, 56; 490 NW2d 568 (1992).

III. DEFAULT

Amos Financial next argues that the trial court abused its discretion by denying the motion to set aside the default.[12]

"Default is a drastic measure and should be used with caution." *Traxler v Ford Motor Co*, 227 Mich App 276, 286; 576 NW2d 398 (1998). It may be used as a sanction when there is "flagrant or wanton" behavior, such as repeated violations of a court order. *Swain v Morse*, ___Mich App ___, ___; ___ NW2d ___ (2020) (Docket No. 346850); slip op at 4. Before imposing such an extreme sanction, a trial court should carefully consider:

> (1) whether the violation was wilful or accidental; (2) the party's history of refusing to comply with previous court orders; (3) the prejudice to the opposing party; (4) whether there exists a history of deliberate delay; (5) the degree of compliance with other parts of the court's orders; (6) attempts to cure the defect; and (7) whether a lesser sanction would better serve the interests of justice. [*Id*. at ___; slip op at 7 (quotation marks and citation omitted).]

"Although the law favors a determination of a claim on the basis of its merits, the policy of this state is generally against setting aside defaults and default judgments that have been properly entered." *ISB Sales Co v Dave's Cakes*, 258 Mich App 520, 526; 672 NW2d 181 (2003).

> A motion to set aside a default or a default judgment is to be granted only if the movant shows good cause and files an affidavit demonstrating a meritorious defense. MCR 2.603(D)(1). Good cause consists of: (1) a substantial procedural defect or irregularity or (2) a reasonable excuse for the failure to comply with the requirements that created the default. Manifest injustice is not an independent factor in establishing good cause. It is the result that would occur if a default were allowed to stand after a party had demonstrated good cause and a meritorious defense. [*Saffian v Simmons*, 267 Mich App 297, 301-302; 704 NW2d 722 (2005), aff'd 477 Mich 8 (2007).]

When determining whether there is good cause to set aside a default, the trial court should consider the totality of circumstances and, as relevant to the case, the trial court may consider a nonexhaustive list of factors as detailed by this Court in *Shawl v Spence Bros, Inc*, 280 Mich App 213, 238-239; 760 NW2d 674 (2008).

## A. CONTESTED MOTION HEARINGS

On appeal, Amos Financial first contends that the trial court erred by entering a default—and refusing to set aside the default—because MCR 2.119(E) does not authorize a default for a

---

[12] Amos Financial preserved its arguments regarding the default by filing a motion to set aside the default. See MCR 2.603(D); *Huntington Nat'l Bank v Ristich*, 292 Mich App 376, 383; 808 NW2d 511 (2011). We review for an abuse of discretion a trial court's decision to grant or deny a motion to set aside a default. *Id*. "A trial court abuses its discretion when it reaches a decision that falls outside the range of principled outcomes." *Id*. Questions involving the interpretation and application of the court rules are reviewed de novo. *Id*.

litigant's failure to appear at a contested motion hearing. In response, plaintiffs contend that MCR 2.119(E) does not apply and that a default was authorized under either MCR 2.401(G) or MCR 2.504(B). We conclude that MCR 2.119(E) provides the appropriate framework for addressing Amos Financial's failure to appear at the hearing and that a default was not properly entered under this provision or for any other discernable reason.

Generally, "[a] trial court's authority to enter a default or a default judgment against a party must fall within the parameters of the authority conferred under the court rules." *Henry v Prusak*, 229 Mich App 162, 168; 582 NW2d 193 (1998). When a default has not been properly entered, a trial court abuses its discretion by failing to recognize that good cause exists to set aside the default. *Village of Edmore v Crystal Automation Sys Inc*, 322 Mich App 244, 255; 911 NW2d 241 (2017).

Relevant to Amos Financial's argument, pursuant to MCR 2.116(G)(1), motions for summary disposition are governed by the rules for motion practice in MCR 2.119, and in particular, a hearing on a contested motion is governed by MCR 2.119(E), which states:

(E) Contested Motions.

(1) Contested motions should be noticed for hearing at the time designated by the court for the hearing of motions. A motion will be heard on the day for which it is noticed, unless the court otherwise directs. If a motion cannot be heard on the day it is noticed, the court may schedule a new hearing date or the moving party may renotice the hearing.

(2) When a motion is based on facts not appearing of record, the court may hear the motion on affidavits presented by the parties, or may direct that the motion be heard wholly or partly on oral testimony or deposition.

(3) A court may, in its discretion, dispense with or limit oral arguments on motions, and may require the parties to file briefs in support of and in opposition to a motion.

(4) Appearance at the hearing is governed by the following:

(a) A party who, pursuant to subrule (D)(2), has previously rejected the proposed order before the court must either

(*i*) appear at the hearing held on the motion, or

(*ii*) before the hearing, file a response containing a concise statement of reasons in opposition to the motion and supporting authorities.

A party who fails to comply with this subrule is subject to assessment of costs under subrule (E)(4)(c).

(b) Unless excused by the court, the moving party must appear at a hearing on the motion. A moving party who fails to appear is subject to assessment of costs

-14-

under subrule (E)(4)(c); in addition, the court may assess a penalty not to exceed $100, payable to the clerk of the court.

(c) If a party violates the provisions of subrule (E)(4)(a) or (b), the court shall assess costs against the offending party, that party's attorney, or both, equal to the expenses reasonably incurred by the opposing party in appearing at the hearing, including reasonable attorney fees, unless the circumstances make an award of expenses unjust.

While Amos Financial asserts that MCR 2.119(E) applies to the motions for summary disposition in this case, plaintiffs assert on appeal that MCR 2.119(E) is simply inapplicable because it only applies *if* the litigants first proceed through the procedures for an uncontested order under MCR 2.119(D). Given that no party submitted an order for stipulation under MCR 2.119(D), plaintiffs argue that the case never moved to MCR 2.119(E). This argument lacks merit because the procedures for uncontested orders under MCR 2.119(D) are optional—that is, before filing a motion, a party "may" serve a proposed order on an opposing party. See MCR 2.119(D)(1). See also *Browder v Intl Fid Ins Co*, 413 Mich 603, 612; 321 NW2d 668 (1982) (recognizing "may" as a "permissive" rather than mandatory word). But a party may also forgo these procedures in favor of filing a contested motion. That is, "[a] party is not required to invoke the procedures of subrule (D) and seek acquiescence in an order from an opponent, but may proceed directly under subrule (E) on contested motions." 1 Longhofer, Michigan Court Rules Practice, Text § 2119.6 (7th ed). Contrary to plaintiffs' arguments, MCR 2.119(E) applies to the motions in this case.

The question becomes whether default is an available sanction under MCR 2.119(E) for failing to appear at a summary disposition hearing. Appearances at a contested motion hearing are generally governed by MCR 2.119(E)(4). Under MCR 2.119(E)(4)(b), "the *moving* party *must* appear at a hearing on the motion." (Emphasis added). In comparison, under MCR 2.119(E)(4)(a), a party other than the moving party is only required to appear (or alternatively file a response to the motion) *if* that party has previously rejected a proposed order under MCR 2.119(D)(2).

In this case, Amos Financial moved for summary disposition, and as the movant, Amos Financial was required to appear. See MCR 2.119(E)(4)(b). In contrast, as the nonmovant responding to plaintiffs' and intervenors' motions, because Amos Financial had not previously rejected a proposed order under MCR 2.119(D)(2), Amos Financial had no obligation to appear under MCR 2.119(E)(4)(a).[13] In any event, Amos Financial did file a response to plaintiffs' and intervenors' motions for summary disposition consistent with MCR 2.119(E)(4)(a)(*ii*).

Considering the requirements of MCR 2.119(E), Amos Financial's only violation of the court rule was in failing to appear as the moving party as required by MCR 2.119(E)(4)(b). However, default is not an available sanction under MCR 2.119(E) for such an infraction. Instead,

---

[13] More generally, a party is not necessarily required to respond to a motion for summary disposition, and failure to respond does not automatically entitle a movant to summary disposition. See, e.g., *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 370; 775 NW2d 618 (2009).

-15-

under MCR 2.119(E)(4)(b) and (c), the available sanctions for Amos Financial's failure to appear were (1) the mandatory[14] sanction of costs equal to reasonable expenses incurred by the opposing party in appearing, including reasonable attorney fees, and (2) a penalty not to exceed $100. Having expressly provided a sanction for violation of MCR 2.119(E)(4)—for failure to appear at a contested hearing—the court rules also impliedly precluded other sanctions, including the extreme sanction of dismissal. Cf. *McGee v Macambo Lounge, Inc*, 158 Mich App 282, 287-288; 404 NW2d 242 (1987) (concluding that default could not be entered for insurance representative's failure to appear at settlement conference when the rule permitting default only applied to a party or attorney's failure to attend). See also *Woodring v Phoenix Ins Co*, 325 Mich App 108, 114; 923 NW2d 607 (2018). By entering a default not authorized as a sanction for Amos Financial's violation, the trial court committed an error of law constituting an abuse of discretion. See *Gawlik v Rengachary*, 270 Mich App 1, 9; 714 NW2d 386 (2006).

Indeed, the trial court expressly granted summary disposition "by default," but caselaw is clear that a motion for summary disposition must be decided on the merits; that is, summary disposition *cannot* be granted as a sanction or on a default basis. See *Whalen v Bennett*, 67 Mich App 720, 725; 242 NW2d 502 (1976) (recognizing that summary disposition by "general default" for failure to appear at summary disposition hearing was improper when summary disposition was not warranted on the merits). As explained by this Court: "MCR 2.116 is not a rule of sanction. Summary disposition is proper only when the pleadings show that a party is entitled to judgment as a matter of law or if the affidavits or other proofs show no genuine issue of material fact." *Brenner v Kolk*, 226 Mich App 149, 155; 573 NW2d 65 (1997). The trial court erred as a matter of law by granting summary disposition by default.[15]

Plaintiffs also argue that default was authorized under either MCR 2.401(G) or MCR 2.504(B). Plaintiffs' reliance on MCR 2.401(G)[16] is clearly misplaced because this rule applies to

---

[14] The sanctions under MCR 2.119(E)(4)(c), which "shall" be awarded, are mandatory. See 1 Longhofer, Michigan Court Rules Practice, Text § 2119.6 (7th ed).

[15] As an alternative, the trial court also purported to consider the merits of plaintiffs' and intervenors' motions for summary disposition. However, the trial court's factual "findings" in support of summary disposition were not a proper consideration of the motions on the merits under any subsection of MCR 2.116. The trial court engaged in fact-finding on disputed issues and essentially accepted plaintiffs' and intervenors' allegations as true when granting summary disposition to those parties. Such procedures are not contemplated by MCR 2.116. As such the trial court's supplemental "findings" were not a determination of the summary disposition motions on the merits. Accordingly, these factual findings did not cure the impropriety of the grant of summary disposition as a default. See *Whalen*, 67 Mich App at 725. For the same reason, any legal rulings made in the context of those findings are also vacated and so the issues concerning Amos Financial's postassignment actions (see p 16, *supra*) shall be considered and determined on remand.

[16] Under MCR 2.401(G)(1) "[f]ailure of a party or the party's attorney or other representative to attend a scheduled conference or to have information and authority adequate for responsible and effective participation in the conference for all purposes, including settlement, as directed by the

-16-

pretrial "conferences," MCR 2.401, not contested motion hearings. Contrary to plaintiffs' arguments, MCR 2.119(E)(4), not MCR 2.401(A),[17] governs the parties' obligation to appear at a contested motion hearing, and MCR 2.119(E)(4) provides the appropriate sanctions for failure to appear at such a hearing. Indeed, the fact that MCR 2.401(G) authorizes default as a sanction for failing to appear at a conference—whereas such a sanction is noticeably missing from MCR 2.119—only further supports the conclusion that default is generally not an available sanction for failing to appear at a contested motion hearing. See *Russell v Detroit*, 321 Mich App 628, 642; 909 NW2d 507 (2017) ("Generally, when language is included in one section . . . but omitted from another section, it is presumed that the drafters acted intentionally and purposely in their inclusion or exclusion.") (quotation marks and citation omitted).

Regarding MCR 2.504(B)(1), this provision states: "If a party fails to comply with these rules or a court order, upon motion by an opposing party, or sua sponte, the court may enter a default against the noncomplying party or a dismissal of the noncomplying party's action or claims." The trial court did not specifically rely on this provision when entering a default against Amos Financial, but the court cited this provision when denying Amos Financial's motion to set aside the default. The flaw in the court's reliance on this provision—and in plaintiffs' arguments regarding this rule on appeal—is that the court did not identify a court rule or a court order that Amos Financial violated by failing to appear at the hearing in question. Absent a failure to comply with a rule or a court order, MCR 2.504(B)(1) cannot be used to justify the default in the case.[18]

In arguing for the application of MCR 2.504(B)(1), plaintiffs contend that Amos Financial had been "ordered" to appear for the summary disposition hearing as evinced by what plaintiffs characterize as an "order to appear." Certainly, attendance can be compelled by "a properly issued subpoena or order from the court" that commands the appearance. *Rocky Produce, Inc v Frontera*, 181 Mich App 516, 517; 449 NW2d 916 (1989). See also 3 Longhofer, Michigan Court Rules Practice, Text § 2506.4 (7th ed). However, the document that plaintiffs cite is a "notice to appear," signed by a court clerk. It is not an "order" of the trial court. See MCR 2.602(A)(1) (stating that, with limited exceptions not applicable in this case, "all judgments and orders must be in writing, signed by the court"). And although a subpoena can be signed by a court clerk, see MCR 2.506(C)(1), the notice that plaintiffs rely on does not otherwise meet the requirements under MCR 2.506. In short, the notice on which plaintiffs rely is neither an order of the trial court nor a subpoena compelling attendance under MCR 2.506, and absent an order or subpoena, Amos

---

court, may constitute a default to which MCR 2.603 is applicable or a ground for dismissal under MCR 2.504(B)."

[17] Under MCR 2.401(A), "[a]t any time after the commencement of the action, on its own initiative or the request of a party, the court may direct that the attorneys for the parties, alone or with the parties, appear for a conference."

[18] Courts also possess inherent authority to sanction litigants for misconduct, but absent a violation of a court order or a court rule in this case, it is difficult to see how Amos Financial could be seen to have engaged in any sanctionable misconduct by failing to appear at a hearing. See generally *Swain*, ___Mich App at ___; slip op at 5.

-17-

Financial cannot be defaulted for failing to attend.[19] Cf. *Rocky Produce, Inc*, 181 Mich App at 517-518 (finding default improper when party had not received an order or a subpoena, but only an "unsigned, undated trial notice"). Instead, absent an order from the trial court, appearance at the hearing on the contested motions for summary disposition was governed by MCR 2.119(E)(4), and Amos Financial's failure to appear as the moving party was subject to sanction by (1) a penalty and (2) costs for the opposing party.[20] See MCR 2.119(E)(4)(b) and (c).

Moreover, we note that, even if Amos Financial violated an order by failing to appear at the summary disposition hearing, this failure to appear was an isolated incident in an otherwise vigorously defended case. Default is an extreme sanction for "flagrant or wanton" behavior, such as repeated violations of a court order. *Swain*, ___Mich App at ___; slip op at 4. Its use in this case for an isolated incident appears wholly unwarranted, particularly when Amos Financial appeared to argue at a previous summary-disposition hearing, fully briefed its position regarding summary disposition, and sent an attorney to the hearing in question to rest on these briefs. On this record, the default was not properly entered, and the trial court abused its discretion by failing to recognize that good cause existed to set aside the default.[21] See *Village of Edmore*, 322 Mich App at 255, 258.

## B. *SHAWL* FACTORS

We also note that the factors in *Shawl* supported a finding of good cause. See *id*. at 258. Most notably, Amos Financial did *not* fail to respond or miss any deadlines, but in fact filed multiple briefs, responses, replies, and supplemental briefs regarding the various cross-motions for summary disposition. As noted, Amos Financial appeared and argued at a previous hearing on the motions for summary disposition, and at the hearing in question, Amos Financial arranged for an attorney to appear in order to inform the court that Amos Financial intended to rest on its briefs. More generally, Amos Financial's failure to attend the hearing in question was an isolated incident in an otherwise vigorously defended case.

Rather than recognize Amos Financial's diligent and thorough written filings regarding the cross-motions for summary disposition (and Amos Financial's otherwise diligent defense in this

---

[19] Aside from the notice to attend, plaintiffs also point to an order signed by the trial court, adjourning the hearing (originally scheduled for April 11) to a later date. Although the document is an order signed by the trial court, it simply states that the hearing was adjourned; it cannot plausibly be read as requiring Amos Financial to appear at the hearing.

[20] Unlike the SCAO notice to appear form, the notice provided in this case gave no indication that default—rather than the sanctions in MCR 2.119—would apply if Amos Financial failed to appear. That is, SCAO, *Form MC 06* (June 2019) states: "FAILURE OF THE DEFENDANT TO APPEAR in a civil case may cause a default judgment to be entered. FAILURE OF THE PLAINTIFF TO APPEAR may result in a dismissal of the case." However, the SCAO form was not used in this case, and no comparable warning was provided.

[21] The trial court also abused its discretion by entering the default without first evaluating other options and by failing to consider the factors set forth in *Vicencio v Ramirez*, 211 Mich App 501, 506-507; 536 NW2d 280 (1995).

case), the trial court characterized all previous actions as "dead in the water" because they were undertaken by Amos Financial's former attorney and Amos Financial had a new attorney who "left the case dormant." Such a characterization is both puzzling and impractical, as it seems infeasible that a new attorney—potentially hired after the expiration of filing deadlines—could or would refile all pleadings and documents. Stated more substantively, the trial court's disregard of previous filings ignores the legal relationship between an attorney and client in which an attorney acts as an agent of the client. See *Russell*, 321 Mich App at 641. Revocation of an agent's authority—and appointment of a new agent—does not retroactively undo the completed acts of the former agent. See *In re Estate of Capuzzi*, 470 Mich 399, 404; 684 NW2d 677 (2004). Accordingly, when Amos Financial made no attempt to repudiate the filings of its previous attorney, those filings were—and remained—the filings of Amos Financial. The trial court erred as a matter of law by considering Amos Financial's filings "dead in the water" and concluding that Amos Financial left the case "dormant" because its new attorney did not submit new, additional filings.

Additionally, Amos Financial promptly moved to set aside the default. Indeed, Amos Financial informed the trial court in open court of its intent to file such a motion even before the court actually entered the written orders of default. And it should be noted that plaintiffs and intervenors sought over *$100 million* in damages—a potentially severe consequence that weighed in favor of finding good cause. See *Village of Edmore*, 322 Mich App at 259. Of the *Shawl* factors pertinent to this case, the factors strongly supported a finding of good cause. Default was an extreme and unwarranted sanction on the facts of this case, and the trial court abused its discretion by failing to recognize good cause to set aside the default.

## C. MERITORIOUS DEFENSES

As noted, setting aside a default requires both good cause *and* meritorious defenses. *Saffian*, 267 Mich App at 301-302. On appeal, Amos Financial focuses its arguments solely on good cause. Plaintiffs fault Amos Financial for not addressing meritorious defenses on appeal, and plaintiffs assert that "[t]he trial court ruled that Amos Financial had no meritorious defense." Plaintiffs' assertion is a misstatement of the record as the trial court expressly stated, with respect to Amos Financial's motion to set aside the default, that it was "abundantly clear" that Amos Financial had *several* meritorious defenses. Further, given that the trial court ruled in favor of Amos Financial on the question of meritorious defenses, we see no reason for Amos Financial to address meritorious defenses on appeal. See generally *Ford Motor Co v Jackson*, 399 Mich 213, 226; 249 NW2d 29 (1976) ("[O]nly an aggrieved party may properly seek relief from an appellate court.") (quotation marks and citation omitted). In other words, given that the trial court found that Amos Financial had meritorious defenses—a ruling that plaintiffs do not challenge—the only issue on appeal regarding setting aside the default is whether Amos Financial demonstrated good cause. And because Amos Financial demonstrated good cause, the trial court abused its discretion by denying Amos Financial's motion to set aside the default. See *Village of Edmore*, 322 Mich App at 258-259.

Consequently, the default and the trial court's subsequent orders, including those regarding damages, the transfer of the properties, and attorney fees are set aside. We therefore remand the case for a determination of liability on the merits of those limited claims relating to Amos

Financial's compliance with the foreclosure by advertisement statute that are within the circuit court's jurisdiction as detailed earlier in this opinion.[22]

## V. THE PARTIES' REMAINING ISSUES ON APPEAL

Given our determinations that the circuit court lacked jurisdiction over the majority of claims in this case and that the default should be set aside and the case remanded for a determination of Amos Financial's liabilities on the merits of those limited claims within the circuit court's jurisdiction, we find it unnecessary to address most of the parties' remaining arguments in Docket Nos. 350862, 350902, and 352014 because those issues involve (1) matters outside the circuit court's jurisdiction or (2) questions related to damages and attorney fees that should not be decided before a determination of Amos Financial's liability, on the merits, on remand. However, to ensure a proper resolution on remand, we briefly address one additional point raised by Amos Financial. In particular, Amos Financial argues, and we agree, that Stefanos Peroustianis, as an individual, is not a real party in interest.

It is axiomatic that "[a] plaintiff must assert his own legal rights and interests and cannot rest his claim to relief on the legal rights or interests of third parties." *Barclae v Zarb*, 300 Mich App 455, 483; 834 NW2d 100 (2013) (quotation marks and citation omitted). Moreover, a case must be brought in the name of the real party in interest. *Id.* "A real party in interest is one who is vested with the right of action on a given claim, although the beneficial interest may be in another." *In re Beatrice Rottenberg Living Trust*, 300 Mich App 339, 356; 833 NW2d 384 (2013) (quotation marks and citations omitted). In the case of a trust, it is the trustee who actually owns, and may pursue, the claims. *Id*. at 356-357.

In this case, Stefanos intervened, both in his capacity as cotrustee and to assert his own individual claims, and the trial court awarded Stefanos exemplary damages in his individual capacity. However, "under Michigan law, exemplary damages are a form of damages, and do not constitute a separate cause of action." *Chungag v Wells Fargo Bank, NA*, 489 Fed App'x 820, 826 (CA 6, 2012). In other words, Stefanos could not claim exemplary damages without a viable underlying cause of action. See *id*. But at this time, the rights at issue in the Center Street property belong to the trust and not to Stefanos individually, and these claims relating to the property therefore belong to the trust and must be pursued by the trustee. See *In re Beatrice Rottenberg Living Trust*, 300 Mich App at 356-357. Accordingly, to the extent Stefanos sought to raise claims

---

[22] Assuming plaintiffs and intervenors can establish their claim that Amos Financial violated the foreclosure by advertisement statutes, "defects or irregularities in a foreclosure proceeding result in a foreclosure that is voidable, not void ab initio." *Kim v JPMorgan Chase Bank, NA*, 493 Mich 98, 115; 825 NW2d 329 (2012). Consequently, to set aside the foreclosure sales, plaintiffs and intervenors also must demonstrate that they were prejudiced by Amos Financial's failure to comply with the statute. See *id*. To establish prejudice, plaintiffs and intervenors "must show that they would have been in a better position to preserve their interest in the property absent [Amos Financial's] noncompliance with the statute." *Id*.

individually, he was not a real party in interest, and on remand, he should be dismissed from the case in his individual capacity.

Vacated and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Douglas B. Shapiro
/s/ David H. Sawyer
/s/ Jane M. Beckering